Argued at Pendleton October 27, 1930; affirmed January 3, 1931

## BOYD *v.* COLEMAN ET AL.
### (294 P. 604)

*Max Wilson, of Joseph,* for appellants.

*George W. Cherry,* of Enterprise (J. A. Burleigh, of Enterprise, on the brief) for respondent.

KELLY, J. The question of fraudulent intent being one of fact (§ 63-510, Oregon Code 1930; § 10173, Or. L.), we refer to the testimony for its solution. One of the mortgages in suit secured a note in the principal sum of $2,500. This note and the mortgage securing it was dated November 21, 1927. The note bears an endorsement, dated November 21, 1927, in the sum of $1,266.50. Defendant Thornburgh was unable to explain why he gave defendant Coleman the credit evidenced by this endorsement. Thornburgh identified Coleman's note for $650 in favor of the Wallowa National Bank dated February 14, 1927, and its renewal note for $682.50 dated August 13, 1927, together with Thornburgh's check dated November 21, 1927, in the sum of $718.15 with which this renewal note was paid. Thornburgh identified Coleman's note for $450 in favor of the Wallowa National Bank and Thornburgh's check for $451.50 with which same was paid. He also testified that he paid a note which Coleman owed the First Bank of Joseph, "or the Laws," in the sum of $303 or thereabouts. In identifying these items of Coleman's indebtedness, Thornburgh testified that his payment of them constituted part of the consideration for the $2,500 mortgage and note in suit. Such explanation on Thornburgh's part, as appears in the record of any further consideration for this mortgage, is uncertain, indefinite and unsatisfactory.

Defendant Coleman testified, in effect, that the consideration for such mortgage was the payment by Thornburgh of a $700 note, a $450 note and a $275 note; and the further sum of $50 advanced by Mr. Thornburgh as the purchase price of a two-year-old Jersey heifer. Further than this, Coleman's testimony, as to the consideration for the $2,500 mortgage, is also uncertain, indefinite and unsatisfactory.

No accounts of their mutual transactions were kept either by Mr. Thornburgh or Mr. Coleman.

With reference to the $2,500 mortgage, Mr. Thornburgh was asked the following question: ''Whatever the difference was between what you did pay for Mr. Coleman, and the amount of that note and mortgage, simply represents an excess mortgage there for that amount, doesn't it?'' This question was answered in the affirmative: Transcript, p. 52.

Mr. Thornburgh, while on direct examination as a witness called by plaintiff, was also asked the following question: ''And the purpose there of your taking that note and mortgage for twenty-five hundred dollars at that time was to protect Mr. Coleman, and prevent his creditors from levying upon this property, that is included in the mortgage, in order to protect your interest as mortgagee wasn't it?'' This question was also answered in the affirmative: Transcript, p. 52.

A very painstaking cross-examination by his attorney sought to minimize the effect of this admission.

As to the $1,000 mortgage, Mr. Coleman testified that the actual consideration was $200 to pay the expense of threshing a crop and the proceeds of the sale of some hogs upon which Thornburgh had a mortgage.

As to the $600 mortgage, Mr. Coleman testified that the actual consideration was $375 with which 75 head of sheep were purchased and that the balance was taken up in hay and oats used in feeding the sheep, together with ''some seed grain and some feed.''

As to the $800 mortgage, Mr. Coleman testified, in effect, that he received no consideration therefor.

■ Here we have a case of mortgages covering all the property of a judgment debtor and containing false statements as to the consideration; also a lack of preciseness in the testimony of the parties to the mortgages as to date, time and amount; also absence of accounts between the parties when the transfer purports to be in consideration of a debt due to the grantee. These are badges of fraud: Bump on Fraudulent Conveyances, (4th Ed.) section 56, 66 and 63.

As to the sale in question, defendant Thornburgh testified, in effect, that, at the time of the sale, he thought there was approximately $600 owing from Coleman to him. The following questions and answers appear in the testimony of defendant Thornburgh:

"Q. Did you determine at that time there would not be enough to pay you off?

"A. Well, I didn't exactly know, but he said he didn't think there would be.

"Q. Didn't think there would be? A. No.

"Q. He was going to sell out and let you have what the stuff brought? A. Yes.

"Q. If it brought more than he owed you, you would repay him would you? A. Yes": Transcript, p. 72.

This is inconsistent with the allegation in the answer that, prior to the sale for a valuable consideration, defendant Coleman transferred all of the said personal property to defendant L. E. Thornburgh. The testimony, just quoted, discloses a reservation in Coleman of a contingent residuary interest in the proceeds of the sale.

■ In the light of the circumstances, as disclosed by the record, we are of the opinion that the able, learned and experienced trial judge correctly held that as to plaintiff the mortgages and sale were fraudulent and void.

From the testimony, it appears that all of the mortgaged property, not theretofore disposed of, was included in the agreement upon which the sale in question was had. This constitutes a merger of the mortgages in the agreement of sale. For this reason, no error was committed by the lower court in failing affirmatively to declare that the notes and mortgages were valid between the parties thereto.

The decree of the lower court is affirmed.

Coshow, C. J., Rand and Bean, JJ., concur.